UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

UNITED STATES OF AMERICA,

    v.                                                             Case No. 2:19-cr-29

EVERETT A. SIMPSON,
        Defendant.

## OPINION AND ORDER

Defendant Everett A. Simpson is charged with two counts of kidnapping, one of which involved a minor, and two counts of interstate transportation of a stolen motor vehicle. Simpson filed a motion to suppress the evidence obtained as the result of a March 21, 2019 search warrant authorizing the collection of buccal DNA samples. He also moved to compel discovery of the contents of the alleged victim's cellphone. For the reasons set forth below, Defendant's motion to suppress evidence is **denied** and his motion to compel discovery is **withdrawn without prejudice**.

## BACKGROUND

The following facts are taken from the affidavits supporting the search warrant at issue in this case and the warrant itself. According to the affidavits, Simpson escaped from Valley Vista in Bradford, Vermont on January 2, 2019. ECF 20-2, at ¶ 17. The State of Vermont placed him there for residential drug treatment as a part of the conditions of his release regarding a separate charge. *Id.* After leaving Valley Vista, Simpson stole a van and fled the city. *Id.*

1

On January 5, 2019, Simpson abandoned the stolen van and approached another vehicle in the parking lot of a mall in Manchester, New Hampshire. *Id.* at ¶¶ 4, 8. The owner of the vehicle Celia Roessler had just secured her four-year-old-child in the backseat of the car. *Id.* at ¶ 8. As Roessler was getting into the driver's seat, Simpson shoved her into the passenger area and took control of the vehicle. *Id.* Simpson then drove out of New Hampshire and into Vermont with Roessler and her child still in the car. *Id.*

In Thetford, Vermont, Simpson pulled to the side of the road and attempted to sexually assault Roessler. *Id.* at ¶¶ 10–11. She tried to get out of the vehicle and yelled to nearby joggers for help. *Id.* at ¶ 10. The joggers indicated that Simpson was attempting to hold Roessler down and drove off as they approached the car. *Id.* at ¶¶ 10–11. Roessler then told Simpson that if he was going to sexually assault her that he should take her to a hotel room. *Id.* at ¶ 12. Roessler later told police that she asked Simpson "to bring her to a hotel because she was afraid that if he raped her beside the road he would kill both her and her son and leave them and because at least most hotels had cameras." *Id.* Simpson eventually drove Roessler to the Comfort Inn in White River Junction and forced her to rent a room with her credit card. *Id.* Once inside the room, Simpson allegedly raped Roessler. *Id.* He then left Roessler and her son in the room and drove off with her car. *Id.* The next day, police officers in Pennsylvania located Roessler's vehicle with "an individual presumed to be Simpson driving it." *Id.* at ¶ 18. Following a pursuit, Simpson abandoned the vehicle on foot and eventually stole another vehicle. *Id.* Law enforcement apprehended him after he crashed the vehicle during a pursuit. *Id.*

On January 7, 2019, United States Magistrate Judge John M. Conroy issued an arrest warrant for Simpson and signed a complaint charging him with kidnapping in violation of 18 U.S.C. § 1201. *Id.* at ¶ 6. FBI Special Agent Jennie Emmons conducted the investigation of

Simpson's alleged crimes and authored the affidavit in support of the criminal complaint. *Id.* On February 21, 2019, a grand jury issued a four-count indictment charging Simpson with two counts of kidnapping under 18 U.S.C. § 1201 and two counts of interstate transportation of a stolen motor vehicle under 18 U.S.C. § 2312. *Id.* at ¶ 5.

On March 21, 2019 the FBI applied for a search warrant to obtain samples of Simpson's DNA. ECF 20. FBI Special Agent Colin Simons stated in the affidavit in support of the search warrant that the FBI collected items from the crime scene that had "DNA deposits from which partial DNA profiles could be produced for comparison purposes." ECF 20-1, at ¶ 9. These items included cigarettes from the hotel room. *Id.* Agent Simons explained that comparing Simpson's DNA with the DNA deposits found at the crime scene would likely produce probative evidence. *Id.* at ¶ 11. "[A] match . . . would tend to show that Simpson was present at the crime scene or scenes, while a discrepancy . . . could constitute exculpatory evidence." *Id.* Agent Simons also incorporated Agent Emmons' affidavit in the application for the search warrant. *Id.* at ¶ 6.

Judge Conroy issued the search warrant on March 21, 2019 (the Warrant). ECF 21, at 1. The caption of the Warrant states: "In the Matter of the Search of . . . Buccal DNA samples from Everett A. Simpson." *Id.* To the right of this statement, the caption displays this case's docket number. *Id.* Below the caption, Judge Conroy identified Everett A. Simpson as the person to be searched and stated that he was in the District of Vermont. *Id.* In addition, Judge Conroy indicated that the search would reveal "DNA for a profile standard, to be compared to DNA profiles recovered from various locations, as evidence of violations of 18 U.S.C. §§ 1201 and 2312." *Id.* Agent Simons executed the search on March 25, 2019. ECF 22, at 2.

**DISCUSSION**

I. SIMPSON'S MOTION TO SUPRESS

In his motion to suppress, Simpson challenges the evidence obtained pursuant to the Warrant on several grounds. First, he claims that the Warrant "was facially invalid for failing to describe the person or place to be searched with particularity and for failing to specify what the authorities were permitted to seize." ECF 31, at 3. Second, Simpson argues that the Warrant "fail[ed] to establish probable cause for the seizure of a DNA sample." *Id.* at 7. Third, Simpson contends that the good-faith exception does not apply because the Warrant lacked any indicia of probable cause and because the Warrant was facially deficient. *Id.* at 11. After reviewing the Warrant, the Court finds these arguments unavailing.

    A. <u>The Warrant described the person to be searched and what the authorities were permitted to seize with sufficient particularity</u>

Simpson claims that the Warrant failed to fulfill the Fourth Amendment's particularity requirement. The Fourth Amendment demands that warrants "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. This requirement aims to "ensure[] that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). To achieve this goal, warrants must "describe the place to be searched with sufficient particularity to direct the searcher, to confine his examination to the place described, and to advise those being searched of his authority." *United States v. Burke,* 784 F.2d 1090, 1092 (11th Cir. 1986); *see also United States v. George*, 975 F.2d 72, 75 (2d Cir. 1991) ("In order to prevent a wide-ranging exploratory search, the warrant must enable the executing officer to ascertain and identify with reasonable certainty those items

that the magistrate has authorized him to seize.") (internal citations and quotations removed). That said, "[a] warrant's description of the place to be searched is not required to meet technical requirements or have the specificity sought by conveyancers." *Burke*, 784 F.2d at 1092.

Simpson argues that the Warrant's description of the person or place to be searched failed to meet this standard. The Court disagrees. The Warrant identifies the person to be searched as "Everett A. Simpson," states that he is "located in the District of Vermont," and includes the individualized docket number for this case.[1] ECF 21, at 1. In addition, Simpson was already in the government's custody when Judge Conroy issued the warrant, which drastically eased any possible difficulties in accurately locating Simpson. ECF 14. With these facts in hand, "the officer with [the] search warrant c[ould], with reasonable effort ascertain and identify the p[erson] intended" to be searched as Simpson. *Steele v. United States*, 267 U.S. 498, 503 (1925). Thus, the Warrant sufficiently described the person or place to be searched.

Simpson also challenges the Warrant's description of the items to be seized. In his view, the Warrant failed to provide a limitation curtailing the officer's discretion because it did not explain how the officer should obtain the DNA sample. Simpson suggests that the Warrant leaves open the possibility that an officer would obtain the DNA sample by "blood sample; cheek swab; hair; a chunk of tissue, bone, or a tooth; or some sort of sci-fi scan[.]" ECF 31, at 6.

Despite his ability to envision the fanciful, Simpson seemingly missed the mundane. The Warrant describes the items to be seized as "DNA for a profile standard . . . ." *Id*. While this description alone is likely adequate,[2] the Warrant is more specific. Its caption states: "In the

---

[1] Everett A. Simpson is the sole defendant in this case.
[2] Because the Warrant clearly identifies DNA as the item to be seized, Simpson argues that it lacked particularity for failing to describe *how* it would be obtained. The Supreme Court dispelled this argument in a different context in *Dalia v. United States*, 441 U.S. 238, 257–58 (1979). It held: "Nothing in the language of the Constitution or in this Court's decisions interpreting that language suggests that, in addition to the [requirements set forth in the text], search warrants also must include a specification of the precise manner in which they are to be executed. On the contrary, it is generally left to the discretion of the executing officers to determine the details of how best to proceed

Matter of the Search of . . . *Buccal DNA samples* from Everett A. Simpson."[3] ECF 21, at 1 (emphasis added). The use of the adjective buccal to describe the DNA samples to be taken places the Warrant safely within the bounds of the Fourth Amendment's particularity requirement. It removes all doubt that the Warrant was "sufficiently specific to permit the rational exercise of judgment [by the executing officers] in selecting what items to seize." *United States v. Shi Yan Liu*, 239 F.3d 138, 140 (2d Cir. 2000) (quoting *United States v. LaChance*, 788 F.2d 856, 874 (2d Cir. 1986)).

B. <u>The magistrate judge had a substantial basis for his probable cause determination</u>

In addition to his particularity arguments, Simpson challenges Judge Conroy's finding that probable cause supported the Warrant. Simpson claims that the supporting affidavit lacked sufficient evidence showing that the DNA deposits found at the crime scene are likely to be linked to him. He asserts that the affidavit failed to adequately describe the DNA deposits and that it did not document whether the crime scenes were secured or that authorities had attempted to exclude the alleged victims as the source of the deposits.

Ultimately, these arguments are unpersuasive. A probable cause determination does not require "a prima facie showing[] of criminal activity." *Illinois v. Gates*, 462 U.S. 213, 235 (1983). Rather, magistrates make "a practical, common-sense decision whether, given all the circumstances set forth in the supporting affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238. When reviewing challenged

---

with the performance of a search authorized by warrant—subject of course to the general Fourth Amendment protection against unreasonable searches and seizures." *Id.* (internal quotations removed).
[3] If Simpson's qualm is that the more specific description is located in the caption of the Warrant rather than the property to be seized section, then the Fourth Amendment will not provide him solace. *See Burke*, 784 F.2d at 1092 ("A warrant's description of the place to be searched is not required to meet technical requirements); see also *United States v. Clark*, 754 F.3d 401, 410 (7th Cir. 2014) ("The Fourth Amendment is not a bulwark against typos.").

warrants, courts "accord[] great deference to a magistrate's determination." *United States v. Leon*, 468 U.S. 897, 914 (1984); *see also United States v. Thomas*, 788 F.3d 345, 350 (2d Cir. 2015) ("[W]e 'accord considerable deference to the probable cause determination of the issuing magistrate.'") (quoting *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007)). In fact, "the task of a reviewing court is simply to ensure that the totality of the circumstances afforded the magistrate 'a substantial basis' for making the requisite probable cause determination." *Thomas*, 788 F.3d at 350; *see also Gates*, 462 U.S. at 238–39 ("[T]he duty of a reviewing court is simply to ensure that the magistrate has a 'substantial basis for . . . conclud[ing] that probable cause existed.") (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)).

Judge Conroy had such a substantial basis for his probable cause determination. The affidavit supporting the Warrant stated that a grand jury had returned an indictment charging Simpson with two counts of kidnapping and two counts of interstate transportation of a stolen motor vehicle. ECF 20-1, at ¶ 5. The indictment alone provides cogent evidence that a buccal DNA swab taken from Simpson had a fair probability of producing evidence of a crime. S*ee Kaley v. United States*, 571 U.S. 320, 328 (2014) ("An indictment fair upon its face, and returned by a properly constituted grand jury, . . . conclusively determines the existence of probable cause to believe the defendant perpetrated the offense alleged.") (citations omitted).

In addition to referencing the indictment, the supporting affidavit stated that Agent Emmons "submitted multiple items of evidence to the FBI laboratory for DNA analysis" during her investigation of Simpson's alleged crimes. ECF 20-1, at ¶ 9. It documented that the FBI examiner confirmed that some of those items "had DNA deposits from which partial DNA profiles could be produced for comparison purposes." *Id.* Among those items "were cigarettes collected from the hotel room where the kidnapper had taken C.R. and J.R." *Id.* The supporting

affidavit then opined that obtaining a buccal DNA sample from Simpson was "likely to produce probative evidence." *Id.* at ¶ 11. It explained that "a match between a DNA standard from Simpson and the profiles obtained from the other evidentiary items would tend to show that Simpson was present at the crime scene or scenes, while a discrepancy between his DNA standard and the profiles could constitute exculpatory evidence." *Id.*

Moreover, the supporting affidavit fully incorporated Agent Emmons's Affidavit in Support of Criminal Complaint. *Id.* at ¶ 6. In her affidavit, Agent Emmons provided a summary of the investigation and outlined the facts underlying Simpson's charges. ECF 20-2, at ¶¶ 1–19. She explained that Simpson had been present at three separate crime scenes. *Id.* at ¶¶ 6, 15. One of these scenes was the hotel room where Simpson allegedly took the victims and where Agent Emmons found the cigarettes and other items from which the FBI recovered DNA. *Id.* at ¶ 6; ECF 20-1, at ¶ 9. These facts taken together demonstrate that Judge Conroy had a substantial basis for making his probable cause determination. Thus, he did not err in issuing the Warrant authorizing the buccal DNA sample.

### C. The exclusionary rule does not apply

As noted above, the Court has not found any violations to Simpson's Fourth Amendment rights. However, even if it did, the exclusionary rule would not apply because the good-faith exception would prevent suppressing the evidence in this case.

Under the good-faith exception, suppression of evidence is not warranted when law enforcement acts "in objectively reasonable reliance on" a warrant issued by a neutral and detached judge. *United States v. Leon*, 468 U.S. 897, 900 (1984). This exception will protect evidence obtained from such searches unless: (1) the issuing judge abandoned a detached and neutral role; (2) the affiant knowingly misled the issuing judge; (3) the supporting affidavit

lacked any indicia of probable cause; or (4) the warrant is otherwise facially deficient. *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008).

Simpson has not argued that Judge Conroy abandoned his judicial role or that Agent Simons knowingly misled the judge with his supporting affidavit. Rather, he claims that the good-faith exception does not apply in this case because "[t]he warrant was entirely lacking in indicia of probable cause and was facially deficient for failure to satisfy the Fourth Amendment's particularity requirement." ECF 31, at 12. He also claims that the FBI agents' "conduct in this case was deliberate, reckless, or grossly negligent" because they "sought, obtained, and executed a warrant that was lacking in probable cause and that was facially deficient." *Id.*

As explained above, Simpson's argument regarding probable cause lacks merit. The affidavit in support of the Warrant stated that Agent Emmons's investigation produced multiple items of evidence that she submitted for DNA analysis. It explained that an FBI laboratory confirmed that some of these items contained DNA deposits which could be used for comparison purposes. Among the items that contained DNA deposits were the cigarettes Agent Emmons found in the hotel room where Simpson had allegedly taken the victims. The supporting affidavit fully incorporated Agent Emmons's affidavit, which summarized her investigation and placed Simpson in the hotel room where she found the cigarettes and other items. The supporting affidavit explained that comparing Simpson's DNA with the partial DNA profiles recovered from the items Agent Emmons submitted would produce probative evidence. In addition, the supporting affidavit stated that a grand jury had already indicted Simpson for these crimes. Even if the totality of the circumstances did not provide a substantial basis for Judge Conroy's determination—as this Court has found—it undoubtedly provided more than an indicium of probable cause.

Similarly, the Warrant is not facially deficient for failing to fulfill the Fourth Amendment's particularity requirement. The Warrant identified the person to be searched as "Everett A. Simpson," stated that he was "located in the District of Vermont," and included the individualized docket number for this case. ECF 21, at 1. In addition, Simpson was already in the government's custody at the time Judge Conroy issued the Warrant. Moreover, the Warrant described the items to be seized as "DNA for a profile standard" and its caption stated: "In the Matter of the Search of . . . Buccal DNA samples from Everett A. Simpson." ECF 21, at 1. These facts show that the Warrant was not facially deficient because it described the person or place to be searched and the items to be seized with sufficient particularity. Because the Warrant did not lack any indicia of probable cause and was not facially deficient, the good-faith exception would prevent suppressing the evidence even if a Fourth Amendment violation had occurred.

The same reasons cited above also dispel Simpson's argument regarding the FBI agents' conduct. The Warrant was not lacking in probable cause and was not facially deficient. Thus, rather than "exhibit[ing] deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights," the agents "act[ed] with an objectively reasonable good-faith belief that their conduct wa[s] lawful." *Davis v. United States*, 564 U.S. 229, 238 (2011). Therefore, application of the exclusionary rule is inappropriate.

II. SIMPSON'S MOTION TO COMPEL DISCOVERY

In addition to his motion to suppress, Simpson moved to compel discovery of Roessler's cell phone. The parties have since entered into a stipulation regarding this issue. According to the stipulation, the government will permit the defense's expert to review the material at the FBI's office. In light of this agreement, the motion to compel discovery is withdrawn without

prejudice. If the defense finds that the terms of the stipulation do not provide sufficient access to the device, it can re-file its motion to compel.

## CONCLUSION

For the foregoing reasons, Defendant's motion to suppress evidence is **denied** and his motion to compel discovery is **withdrawn without prejudice**.

DATED at Burlington, in the District of Vermont, this 10th day of December, 2019.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge