```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT


UNITED STATES OF AMERICA       :
                               :
                               :
         v.                    :    Case No. 2:19-cr-29-1
                               :
EVERETT A. SIMPSON,            :
                               :
         Defendant.            :
```

## OPINION AND ORDER

Defendant Everett A. Simpson is charged with two counts of kidnapping, one of which involved a minor, and two counts of interstate transportation of a stolen motor vehicle. Beginning April 11, 2023, the Court presided over the Defendant's jury trial. On April 14, 2023, the government rested its case, after which Defendant moved pursuant to Fed. R. Crim. P. 29(a) for a judgment of acquittal as to each of the four counts in the Indictment. The Court denied the Defendant's motion for judgment of acquittal on April 17, 2023. After the close of all evidence, the Defendant renewed his previously denied Rule 29 motion as to Counts One and Two the morning of April 18, 2023.

For the reasons summarized below, the Defendant's renewed Rule 29 Motion for a Judgment of Acquittal as to Counts One and Two of the Indictment is **denied.**

1

## Standard

"[A] defendant challenging the sufficiency of the evidence 'bears a heavy burden.' And 'the standard of review is exceedingly deferential.'" *United States v. Martoma*, 894 F.3d 64, 72 (2d Cir. 2017) (quoting *United States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012)). Rule 29(a) of the Federal Rules of Criminal Procedure provides:

> After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction. If the court denies a motion for a judgment of acquittal at the close of the government's evidence, the defendant may offer evidence without having reserved the right to do so.

FRCRP 29(a).

A district court presented with a Rule 29 motion for a judgment of acquittal "must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000) (quoting *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir. 1984)). As such, a court may grant a judgment of acquittal only "if the evidence that the defendant committed the crime alleged was nonexistent or ... meager." *United States v.*

2

*Jackson*, 335 F.3d 170, 180 (2d Cir. 2003) (quoting *United States v. Guadagna*, 193 F.3d 122, 130 (2d. Cir. 1999)). In doing so, the Court must view all evidence "in the light most favorable to the Government, with all reasonable inferences drawn in its favor." *United States v. Glenn*, 312 F.3d 58, 63 (2d Cir. 2002).

At the same time, the Court is conscious of its duty to protect Mr. Simpson's Fifth Amendment rights. *See*, *e.g.*, *United States v. Valle*, 807 F.3d 508, 513 (2d Cir. 2015). If courts "are to be faithful to the constitutional requirement that no person may be convicted unless the Government has proven guilt beyond a reasonable doubt, we must take seriously our obligation to assess the record to determine ... whether a jury could reasonably find guilt beyond a reasonable doubt." *Id*. at 515 (alteration in original) (quoting *United States v. Clark*, 740 F.3d 808, 811 (2d Cir. 2014)). In particular, "specious inferences are not indulged, because it would not satisfy the Constitution to have a jury determine that the defendant is probably guilty. If the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt." *Id*. (quoting *Lorenzo*, 534 F.3d at 159).

When a motion for judgment of acquittal made at the close of the government's case-in-chief is denied and a defendant

3

presents a case, then the evidence put in by the defense will also be considered in deciding a Rule 29 motion after the trial concludes. *See United State v. Velasquez*, 271 F.3d 364, 371-72 (2d Cir. 2001). This "evidence must be viewed in its totality, 'as each fact may gain color from others,'" *United States v. Cassese*, 428 F.3d 92, 98-99 (2d Cir. 2005) (internal citations omitted), and "the Government need not negate every theory of innocence," *United States v. Lorenzo*, 534 F.3d 153, 159 (2d Cir. 2008) (internal quotation marks omitted).

"Where a fact to be proved is also an element of the offense ... it is not enough that the inferences in the government's favor are permissible," but rather, the Court "must also be satisfied that the inferences are sufficiently supported to permit a rational juror to find that the element, like all elements, is established beyond a reasonable doubt." *United States v. Pauling*, 924 F.3d 649, 657 (2d Cir. 2019) (internal quotation marks and alteration omitted); *see also United States v. D'Amato*, 39 F.3d 1249, 1256 (2d Cir. 1994) ("[T]he government must introduce sufficient evidence to allow the jury to reasonably infer that each essential element of the crime charged has been proven beyond a reasonable doubt."). "Direct evidence is not required; '[i]n fact, the government is entitled to prove its case solely through circumstantial evidence, provided, of course, that the government still demonstrates each

4

element of the charged offense beyond a reasonable doubt.'" *Lorenzo*, 534 F.3d at 159 (alteration in original) (quoting *United States v. Rodriguez*, 392 F.3d 539, 544 (2d Cir. 2004)).

## Analysis

I. **A Rational Jury Could Conclude Beyond a Reasonable Doubt that Mr. Simpson Unlawfully and Willfully Seized and Carried Away, Held for His Benefit, and Transported the Victim, C.R., Across State Lines Without Consent in Violation of 18 U.S.C. § 1201(a)(1).**

Count One of the Indictment charges the Defendant, Mr. Simpson, with kidnapping, holding, and willfully transporting the victim, C.R., from New Hampshire to Vermont on or about January 5, 2019 in violation of 18 U.S.C. § 1201(a)(1). The Court finds that the evidence the Government has presented to the jury is legally sufficient to allow a rational trier of fact to establish Defendant's guilt beyond a reasonable doubt.

Defendant's Rule 29 Motion as to Count One of the Indictment challenges the sufficiency of the evidence to establish the Defendant's use of force to hold and transport the victim, C.R., across state lines without her consent. "The very nature of the crime of kidnapping requires that the kidnapper use some means of force—actual or threatened, physical or mental—in each elemental stage of the crime, so that the victim is taken, held[,] and transported [in interstate commerce] against his or her will." *United States v. Macklin*, 671 F.2d 60, 64 (2d Cir. 1982). The Supreme Court has expressed that it is

5

"the involuntariness of seizure and detention which is the very essence of the crime of kidnapping." *Chatwin v. United* States, 326 U.S. 455, 464 (1946). Viewed in the light most favorable to the Government, the evidence at trial of Defendant's use of force to hold and transport the C.R. across state lines is sufficient to persuade a rational juror of Defendant's guilt as to Count One of the Indictment.

During the Government's case-in-chief, the victim, C.R., testified that in the early afternoon of January 5, 2019, she and her then 4-year-old son had driven to the Mall of New Hampshire to have lunch with her mother, stepfather, and grandmother at a restaurant called Bartuccis. The victim and her mother both testified that, at the time, the victim and her son lived in an "in-law apartment" attached to her mother and stepfather's house. Her mother also testified that while she and her daughter left the restaurant separately and in different cars that day, she expected her daughter to return home within 15 minutes of her own return; according to her mother's testimony, C.R. did not return within this anticipated timeline.

The victim further testified that shortly after exiting the Mall of New Hampshire she secured her son, J.R., in a car seat in the back of her vehicle as it was parked in the Mall's parking lot, got into the driver's seat, and closed the door with the intent to drive home. After getting in the car, she

6

sent a text message to her partner about where she and her family had had lunch—that text message, which was admitted into evidence, made no mention of plans that C.R. might have with the Defendant or anyone else that afternoon, nor did it indicate that she would be returning home later than expected. She testified to then noticing the Defendant walking by her vehicle, at which point he opened her unlocked door, pushed her from the driver's seat and into the passenger's seat, entered her vehicle, and immediately began to drive the vehicle out of the parking lot and onto the highway. According to the victim, she did not consent to him entering her vehicle or driving her anywhere; instead she screamed and cried out for help multiple times when the Defendant got into her car; in response, she testified to the Defendant grabbing her hair and pulling her back into the vehicle before driving away.

    The Defendant elected to testify in this case. During his testimony, he asserted that he and C.R. had a prior relationship established online, that they had agreed to meet at the Mall of New Hampshire that day, that they met at her car and she offered to drive him, and that she, not the Defendant, drove the car out of the parking lot. In contrast, the victim testified to never having seen, communicated with, or known of the Defendant before he entered her vehicle. The victim's mother testified to never having met or heard of Mr. Simpson before hearing from her

7

daughter later that night. And Sherice Simpson, Mr. Simpson wife, additionally testified that she had never met, seen, or heard of C.R. before these events took place. That Mr. Simpson was a stranger to the victim was further corroborated by cell phone analysis admitted into evidence; Mr. Simpson presented no cell phone data to the contrary.

On a Rule 29 motion for judgment of acquittal, the Court must resolve "all … issues of credibility in favor of the verdict." *United States v. Howard*, 214 F.3d 361, 363 (2d Cir. 2000). In fact, a Rule 29 motion does not allow the Court the latitude to question credibility or assign weight to the evidence by substituting its judgment for that of the jury." *See United States v.* Jackson, 335 F.3d 170, 180 (2d Cir. 2003). The Court therefore finds that the victim and her mother's testimony, taken as credible, in addition to the records from C.R.'s phone, are sufficient to allow a rational juror to conclude beyond a reasonable doubt that the Defendant used physical force to seize, confine, kidnap, abduct, and carry away the victim.

The Defendant has also asserted that the government has failed to present sufficient evidence to prove beyond a reasonable doubt that he continued to "hold" C.R. from the moment of the alleged seizure through the crossing of state lines from New Hampshire to Vermont. The victim has testified

8

that while the Defendant pushed the majority of her body out of the driver's seat when he entered her vehicle, her leg remained trapped under the Defendant for a significant amount of time before he allowed her to remove it, rendering her immobile. Moreover, the victim testified that she had secured her son, J.R., in his car seat in the back of the vehicle behind the passenger's seat prior to herself, and then the Defendant, entering the vehicle. The victim further testified that once her son was secured in his car seat, he was unable to remove himself, and that while riding in the passenger seat she too was unable to reach into the back of the vehicle to free him. Additionally, the victim testified to telling the Defendant that he could take her car if he let her and her son exit the vehicle safely—according to the victim, the Defendant refused in order to prevent her from reporting his actions to the police.

The victim testified to the emotional burden these circumstances placed on her: that given the force the Defendant, who she did not know, had used to enter the vehicle, and given that she believed she was unable to safely remove her son from his car seat, she felt compelled to remain in the vehicle for the safety of both herself and her son. She testified to complying to the Defendant's commands because she felt scared, trapped, and at risk of her or her son being severely injured. And she testified to both her and her son crying for some time,

9

before she tried to calm herself down in order to make her son feel safe.

The victim further testified that when the Defendant first got into the car, he told her he needed to use her car to travel to a location in New Hampshire. She testified to not realizing until some time later that this was not their destination, and that instead he was taking her to the State of Vermont. According to the victim, he wanted to use her car to look for his wife who worked in Bradford, Vermont. The victim testified that the Defendant did in fact drive into the State of Vermont while she and her son remained in the vehicle.

The Court concludes that, based on this evidence, a rational trier of fact could conclude beyond a reasonable doubt that Mr. Simpson used force to hold the victim for the purpose of preventing her from reporting the theft of her vehicle. And, the Court further concludes that Defendant was exerting this force over the victim while he willfully transported her from the State of New Hampshire to the State of Vermont.

The Defendant purports that specific aspects of the victim's testimony coupled with his own testimony require a rational juror to conclude that she consented to entering and remaining in the vehicle with him and to travelling to the State of Vermont. The Court disagrees. While the victim did testify to complying with many of the Defendant's requests, such as to make

10

phone calls and send texts for him, before they crossed into the state of Vermont, the Court finds that a dispute of fact remains as to whether the victim freely and voluntarily consented to remaining in the vehicle or to crossing into the State of Vermont. And though the victim admitted that the Defendant told her she was safe and in no danger, whether the Defendant's words were sufficient to negate the threat of harm that his actions manifested, including forcing himself into the vehicle, driving away, and refusing to let C.R. and her son go free, remains a question only the jury can answer. Moreover, while the Defendant has asserted that C.R. chose not to take advantage of several opportunities available to her to call for help—an offer to call her boyfriend to let him know she was O.K., an about five second opportunity to talk to a MacDonalds employee, and a moment where a man approached the vehicle at a gas station, when minutes before she had been forcibly pulled back into the car—C.R. testified to her fear that should she take these opportunities, the Defendant would hurt her.

Under a Rule 29 motion, the Court must assess issues of witness credibility in favor of the Government. The Court is not persuaded that Mr. Simpson's testimony that C.R. was in constant possession and control of her phone, that C.R. and J.R. exited the vehicle at a gas station in New Hampshire to make a purchase from Dunkin' Donuts before driving to New Hampshire, and that

C.R. freely and voluntarily offered to help the Defendant look for his wife in Vermont requires the Court to grant the Defendant's Rule 29 motion for judgment of acquittal.

Quite to the contrary, the Court concludes that a reasonable jury could conclude beyond a reasonable doubt that the Defendant threatened and frightened the victim so as to cause her to comply and to remain under his control. The Government need only show that a kidnapper used some means of force in each elemental stage of the crime. Such force need not involve physical restraint or violence—that the Defendant's knowing and willful conduct threatened or frightened the victim into compliance is sufficient to establish a kidnapper's use of force to hold and transport a victim in interstate commerce. As the Supreme Court has explained, "holding" incorporates situations in which the victim is "deprived of [their] liberty, compelled to remain where [they] did not wish to remain, or compelled to go where [they] did not wish to go." *Chatwin*, 326 U.S. at 460. It is only when a victim is "perfectly free to leave the [defendant] when and if [they] desired" that the government fails "to prove an unlawful act of restraint" and, accordingly failed to prove the "holding" element. *Id.* What is more, a "direct threat of harm is not necessary to establish the reasonableness of the alleged victim's fear." *United States v. Convino*, 837 F.2d 65, 68 (2d Cir. 1988). C.R.'s testimony, taken

12

as credible, as to her inability to exit the vehicle without herself or her son facing harm, premised on the Defendant's use of force to enter her vehicle, is sufficient to establish the "holding" element of kidnapping beyond a reasonable doubt.

For these reasons, the Court denies the Defendant's Rule 29 Motion for Judgment of Acquittal as to Count One of the Indictment.

> II. **A Rational Jury Could Conclude Beyond a Reasonable Doubt that Mr. Simpson Seized and Carried Away, Held for His Benefit, and Transported the Victim, J.R., a Minor who had Not Attained the Age of Eighteen Years and who was Neither Related to Nor in the Legal Custody of the Defendant, Across State Lines Without Consent in Violation of 18 U.S.C. §§ 1201(a)(1) and 1201(g).**

Count Two of the Indictment charges the Defendant with kidnapping, holding for his benefit, and transporting the victim, J.R., a minor who was neither related to nor in the custody of the Defendant, from New Hampshire to Vermont on January 5, 2019 in violation of 18 U.S.C. § 1201(a)(1) and 1201(g).

The Defendant argues here that the Government's evidence is insufficient to allow a rational jury to conclude beyond a reasonable doubt that he kidnapped the victim J.R. because the Government cannot establish the first element of the crime of kidnapping under 18 U.S.C. § 1201. The first element requires the government to prove beyond a reasonable doubt that the Defendant seized, confined, kidnapped, abducted, or carried away

13

J.R., C.R.'s son. His key argument is that the Government's evidence fails to demonstrate that he ever removed J.R. from his mother's custody.

The Defendant's argument reflects a miscomprehension or misapplication of the kidnapping statute. In its application to minors, 18 U.S.C. § 1201 does not require that the Defendant remove the minor from their parent's presence. It requires that the minor be unlawfully seized, confined, kidnapped, abducted, or carried away, held for some purpose, and transported in interstate commerce. And the law provides that when a minor lacks capacity to consent based on their age or circumstances, the Government must prove that the minor was kidnapped, held, and transported in interstate commerce without the consent of their parent.

The Court concludes that a rational jury could find beyond a reasonable doubt that Mr. Simpson kidnapped J.R. in violation of 18 U.S.C. § 1201.

First, C.R. and her mother both testified to J.R.'s young age at the time of the alleged kidnapping and of his inability at this point in his life to make decisions for himself. Based on this evidence, a rational trier of fact could conclude beyond a reasonable doubt that J.R. lacked capacity to consent to the Defendant's conduct.

As to the first element of kidnapping, the testimony of C.R. and her mother, as well as photographic evidence of J.R.'s car seat are sufficient to allow a rational jury to conclude that J.R. was incapable of escaping his car seat, and, by extension, the vehicle. In other words, by taking control of C.R.'s vehicle, the Defendant confined J.R. to his seat in the car, abducted him, and carried him away from the parking lot of the Mall of New Hampshire. Because C.R. testified to being unwillingly pushed into the passenger seat of the vehicle and screaming for help while the Defendant drove her and her son out of the parking lot, a reasonable juror could conclude beyond a reasonable doubt that she did not consent to the Defendant using her car to confine, abduct, and carry her son away from the parking lot.

For largely the same reasons, the Government's case includes sufficient evidence to permit a jury to conclude that she did not willfully consent to the Defendant's holding and transport of her son, J.R., across state lines.

The Defendant points to C.R.'s testimony supporting that he never personally held in his hands, touched, or verbally threatened to hurt J.R.—that in fact he did not know that a child was in the back seat of the car when he entered. Nonetheless, this evidence does not speak to the Defendant's use of force to hold J.R. within the walls of the vehicle against

15

either his own or his mother's will or to transport him from New Hampshire to Vermont.

C.R. testified to her son's constant, nearly uncontrollable crying after Mr. Simpson had entered her vehicle. Moreover, J.R.'s visible state of mind at the time police officers arrived at the Comfort Inn in response to the 911 call placed by C.R.'s stepfather corroborates J.R.'s mental state of fear. This, in addition to the evidence that J.R. was physically confined to his car seat, is sufficient to allow a rational juror to conclude beyond a reasonable doubt that the Defendant used force to hold J.R. in the vehicle. This use of force persisted as Defendant drove J.R. and his mother from the State of New Hampshire to the State of Vermont.

For these reasons, the Court denies the Defendant's Motion for Judgment of Acquittal as to Count Two of the Indictment.

## Conclusion

For the reasons set forth above, the Defendant's Rule 29 Motion for a Judgment of Acquittal as to Counts One and Two of the Indictment is **denied.**

SO ORDERED.

DATED at Burlington, in the District of Vermont, this 18th day of April, 2023.

>/s/William K. Sessions III
> William K. Sessions III
> U.S. District Court Judge